IN THE UNTED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE VESSAL, | |
| Plaintiff, | |
| v. | Civil Action No. 2:09-cv-04756 (TJS) |
| ER SOLUTIONS, INC., | |
| Defendant. | |

## DEFENDANT ER SOLUTIONS, INC.'S

## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant ER Solutions, Inc. through its attorneys, Kaufman Dolowich Voluck &Gonzo

LLP, moves this Court under the authority of Fed. R. Civ. P. 12(b)(6), as set forth more fully in

the MEMORANDUM OF LAW IN SUPPORT OF ER SOLUTIONS, INC.'S MOTION TO

DISMISS PLAINTIFF'S AMENDED COMPLAINT, filed this day, to (i) dismiss Plaintiff's

claims under the Fair Debt Collection Practices Act, in part, specifically as to Plaintiff's claims

under 1692f for lack of standing and for failure to state a claim, (ii) dismiss Plaintiff's claims

under the Pennsylvania Fair Credit Extension Uniformity Act and the Pennsylvania Unfair Trade

Practices and Consumer Protection Law in their entirety, for lack of standing and failure to state

a claim, (iii) dismiss Plaintiff's claims under the Telephone Consumer Protection Act for failure

to state a claim upon which relief can be granted and for lack of jurisdiction over Plaintiff's

challenge, (iv) dismiss Plaintiff's state law claims for Invasion of Privacy for failure to state a

claim, and (v) find that Plaintiff has failed to allege claims that support punitive damages, as a

matter of law.

Respectfully submitted this 15th day of January 2010.


### KAUFMAN DOLOWICH VOLUCK & GONZO LLP


BY:_____/s/ Anne R. Myers_____
Anne R. Myers, Esq. (Pa. Bar No. 201900)
1777 Sentry Park West
Gwynedd Hall, Suite 301
Blue Bell, Pennsylvania 19422
(215) 461-1100
(215) 461-1300 (fax)
amyers@kdvglaw.com
Attorneys for Defendant ER Solutions, Inc.

IN THE UNTED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE VESSAL,

                              Plaintiff,          :

v.                                                :     Civil Action No. 2:09-cv-04756 (TJS)

ER SOLUTIONS, INC.,                               :

                              Defendant.          :

MEMORANDUM OF LAW IN SUPPORT OF ER SOLUTIONS, INC.'S

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, ER Solutions, Inc. ("ERS"), respectfully submits under the authority of Fed.

R. Civ. P. 12. this Memorandum of Law in support of its Motion to Dismiss Plaintiff claims set

forth in Plaintiff's Amended Complaint, for lack standing and failure to state a claim, and lack of

this Court's jurisdiction

## I.      FACTUAL ALLEGATIONS.

Plaintiff alleges that ERS contacted Plaintiff at least ten times in attempt to collect a debt

owed, not by Plaintiff but by another woman named Sarah Fuender.  See Amended Complaint at

¶¶ 8 and 9.  Plaintiff informed ERS that she was not Sarah Fuender and that Sarah Fuender did

not live at the phone number that ERS had dialed.  See Amended Complaint at ¶ 9.  Plaintiff

claims that through the use of automated prerecorded messages ERS attempted to coerce

payment of the Sarah Fuender debt, but fails to describe any act that support her allegation of

coercion.  See Amended Complaint at ¶ 11.  An examination of the particulars of Plaintiff's

allege contact with ERS, as set forth in Plaintiff's Amended Complaint, reveals that the

foundation for all of Plaintiff's claims is found in Plaintiff's allegation that after Plaintiff told

ERS that Plaintiff was not Sarah Fuender, ERS "told Plaintiff that her number would be removed

from the call list" but Plaintiff's number was not removed and ERS continued to call Plaintiff looking for Sarah Fuender, often waking Plaintiff's infant from its naps.   See Amended Complaint at ¶ 13.

## II.   PROCEDURAL POSTURE.

On or about October 16, 2009, Plaintiff filed a complaint, in the above captioned mater, seeking damages for alleged violations of the Fair Debt Collections Practices Act, 15 USC §1692 et seq, (First Claim for Relief), the Pennsylvania Fair Credit Extension Uniformity Act and Pennsylvania Unfair Trade Practices and Consumer Protection Law (Second Claim for Relief), Invasion of Privacy (Third Claim for Relief) and Intentional Infliction of Emotional Distress (Fourth Claim for Relief).  In addition, Plaintiff claimed entitlement to punitive damages.

On November 20, 2009, ERS filed a Motion to Dismiss Plaintiff's Complaint.   On December 7, 2009, Plaintiff responded by filing and Amended Complaint seeking damages for alleged violations of he Fair Debt Collections Practices Act ("FDCPA"), 15 USC §1692 et seq, (First Claim for Relief) the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") (Second Claim for Relief), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Third Claim for Relief), the Telephone Consumer Protection Act ("TCPA") (Fourth Claim for Relief), and Invasion of Privacy (Fifth Claim for Relief).  Plaintiff also claims entitlement to punitive damages.

## III.   ARGUMENTS AND AUTHORITIES.

### A.   Standard of Review

The United States Supreme Court has made it clear that in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and [that] a formulaic recitation

of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).

Although Plaintiff is to be afforded every reasonable inference of fact, she must establish that she is legally entitled to the relief requested in her Complaint. As Twombly instructs, "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people' . . . . So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Twombly, 127 S. Ct. at 1966 (citations omitted).[1]

Under this standard, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n. 8 (3d Cir. 1997). Overall, "courts have an obligation . . . to view the complaint as a whole and to base rulings not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable. [Federal Courts] do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000) (citations and quotations omitted).

---

[1] This especially true, in a case such as this one where the monetary damages that the Plaintiff can expect, even if she is able to state a claim upon which relief can be granted, pales in comparison to the attorneys fees generated in prosecuting her claims. See Morris and Posner v. I.C. Systems, (E.D. Pa. No. 06-2133) (noting an arbitration award in the amount of $8,500 in damages where a plaintiff was contacted by telephone 23 times for a debt that he did not owe and an order granting an motion for attorneys fees in excess of $68,000.).

**B.     Plaintiff's state law claims under the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") fail for lack of standing and failure to state a claim.**

**(1)     Plaintiff's claims under the FCEUA are wholly dependant on whether or not Plaintiff can state a claim under the UTPCPL.**

Plaintiff claims that ERS violations of the FCEUA can be found at 73 P.S. § 2270.4(a). See Amended Complaint, at ¶ 35.  73 P.S. § 2270.4(a) provides that:

> It shall constitute an unfair or deceptive collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act.

Plaintiff's claims under the FCEUA fail for all the reasons that Plaintiff's claims under the UTPCPL fail, as set forth below.

**(2)     A violation of the FCEUA does not result in a cause of action under the UTPCPL**

Plaintiffs alleges, without citation to authority, that a FCEUA violation is a per se violation of the UTPCPL.  See Amended Complaint at ¶¶ 39 and 40.  This argument was rejected in Wenglicki v. Tribeca Lending Corp., No. 07-45222009 U.S. Dist. LEXIS 63738, at *6 (E.D. Pa. July 22, 2009).  The Wenglicki plaintiff failed to state a UTPCPL claim where the only basis for his claim was an FCEUA violation noting that in order to state a UTPCPL claim, the plaintiff must allege "with particularity the [UTPCPL] elements necessary to support a violation . . . as to a particular Defendant." Id. (citations and quotations omitted).

**(3)     Plaintiff lacks standing to bring a suit under the UTPCPL because she has not alleged that she was the person who made the "purchase" that became the basis of the instant dispute, as required by statute.**

The legislative intent in enacting the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") was to enhance the protection of the public from unfair or deceptive business practices. See Gabriel v. O'Hara, 534 A.2d 488, 491 & n.6 (Pa. Super. Ct. 1987).   The principle enhancements of pre-existing common law protections included the codification of a list of practices designated as "unfair or deceptive" and therefore "unlawful" (73 P.S. §§ 201-2, 201-3), authorization of the Pennsylvania Attorney General to take several specific types of action to protect the citizenry from such practices (73 P.S. §§ 201-3.1 to 201-9.1), and authorizing a private cause of action by private parties for treble damages in certain circumstances (73 P.S. § 201-9.2).   The central underlying intent was fraud prevention.   See Commonwealth v. Monumental Properties, 459 Pa. 450, 329 A.2d 812, 815-17 (1974);

The provisions of the UTPCPL clearly limit the class of plaintiffs who may pursue private actions.   See Gemini Physical Therapy and Rehabilitation Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 65 (3d Cir. 1994); Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).   A plaintiff seeking to recover under section 201-9.2 "must not only have suffered an ascertainable loss as the result of an 'unfair or deceptive act,' but also must be a 'person,' who made a 'purchase' 'primarily for personal, family, or household purposes.'"   Baldston v. Medtronic Sofamor Danek, Inc., 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001)) ("Baldston I").

Dr. Balderston brought suit under the UTPCPL in the Pennsylvania Court of Common Pleas, claiming Medtronic and Acromed intentionally concealed and misrepresented the Food and Drug Administration approval status of their pedicle screws. See Balderston v. Medtronic

Sofamor Danek, Inc., 285 F.3d 238, 239 (3rd Cir. 2002).   As evidence of wrongdoing, Dr. Balderston alleged defendants promoted their screws through teaching seminars and literature, leading him and other orthopedic surgeons to believe they were FDA approved.  Id.  Because the screws were not FDA approved for spinal fusion surgeries, Dr. Balderston alleged he was exposed to lawsuits by patients claiming they did not give informed consent.  Id.  After removal to the Eastern District of Pennsylvania on the basis of diversity, the District Court granted defendants' motion to dismiss Dr. Baldston's UTPCPL claims under Fed. R. Civ. P. 12(b)(6).  Balderston, 285 F.3d at 240.  The District Court reasoned that Dr. Balderston lacked standing to bring a UTPCPL claim because he did not qualify as a "purchaser" under the statute.  Id.  Dr. Balderston acknowledged that he did not purchase the pedicle screws himself, but contended that he acted as his patients' "purchasing agent."  The District Court found Dr. Balderston lacked standing to bring suit under the UTPCPL because Dr. Balderston brought suit not as the "legal representative" of his patients, but on his own behalf for personal losses.  Id.  Because Dr. Balderston had "no interest in this litigation whatsoever," the District Court found Dr. Balderston had no private right of action.  Id.  Therefore, he had no standing under the [PUTP]CPL.  Id.

Judge Sirica, of the Third Circuit, approved of the District Court's dismissal of Dr. Balderston's claims noting that the Third Circuit has long held that although "the statute unambiguously permits only persons who have purchased or leased goods or services to sue. The private cause of action is also limited to unfair or deceptive methods, acts, or practices in the conduct of any "trade or commerce" . . . . Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so.   The Pennsylvania Supreme Court has never addressed the issue before us.  Its only reported decision on the CPL supports the conclusion that a private plaintiff must at least have purchased or leased

goods or services." Balderston, 285 F.3d at 240 (citing Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (citations omitted)).

In Lawrence v. Trans Union L.L.C., 296 F. Supp. 2d 5 (E.D. Pa. 2003), a court of this district looked to Judge Sirica's reasoning in Balderston to determine whether or not the UTPCPL anticipated claims against a credit agency who inaccurately reported an award of judgment in small claims court won by a creditor as a it as a judgment against her. As a result of the false report Lawrence was denied college loans for her daughter's education by Sallie May and Key Bank. Both informed Lawrence that the application had been denied because the credit reporting agency reported an unpaid judgment against her. Lawrence, 296 F. Supp. 2d at 585. The Eastern District Court dismissed Lawrence's claims against the credit reporting agency noting that it was "undisputed that Lawrence did not purchase or lease any goods from defendant" and held that "consumers cannot sue consumer reporting agencies under the [UTPCPL] who have not sold or leased goods to them." Lawrence, 296 F. Supp. 2d at 592.

Like the plaintiffs in Balderston and Lawrence, Plaintiff lacks standing to bring a suit under the UTPCPL because she has not alleged that she was the person who made the "purchase" that became the basis of the instant dispute, as required by statute. In fact, Plaintiff's complaint makes it clear that "Sarah Fuender" was the person who made the purchase at issue. Amended Complaint at ¶ 8. For these reasons Plaintiff's claims under the FCEUA and the UTPCPL fail, as a matter of law.

    **(4)    Plaintiff's claims under the UTPCPL fail because Plaintiff has not alleged reliance or an ascertainable loss of money or property.**

The UTPCLP contains a "catch-all" provision that prohibits all "fraudulent or fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 PA.

CONS. STAT. § 201-2(4)(xxi). A plaintiff bringing a private action under the UTPCPL must show that "he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004). Plaintiff has failed to allege justifiable reliance. Hunt v. United States Tobacco Co., 538 F.3d 217, 222 (3rd Cir. 2008) ("The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm.").

Judge Sirica explored the essential element of reliance in Hunt v. United States Tobacco Co. The Plaintiff in Hunt brought suit on his own behalf, as well as proposed class members, alleging that the defendant engaged in anticompetitive behavior that artificially inflated the price of the company's moist smokeless tobacco products, causing purchasers to pay at least $ 0.07 per can more than they would have paid in an efficient market. Hunt, 538 F.3d at 219. Plaintiff alleged that the defendant's misconduct included theft and concealment of competitors' distribution racks and point-of-sale advertisements at various stores, as well as dissemination of disparaging and false statements about competitors' products. Id. Hunt further alleged that the defendant concealed its anticompetitive behavior, thereby leading "all consumers acting reasonably under the circumstances to believe that they were purchasing moist smokeless tobacco products at prices born[e] by a free and fair market." Id. The defendant moved to dismiss the Hunt's complaint under Fed. R. Civ. P. 12(b)(6) on the ground that Hunt failed to allege that he had justifiably relied on defendant's deceptive conduct and suffered harm as a result of that reliance. Hunt, 538 F.3d at 220. The District Court denied the motion, holding that Hunt did not "need to establish reliance under the catch-all provision of the [Consumer

Protection Law]." Hunt, 538 F.3d at 220 (citing and quoting Hunt v. United States Tobacco Co., No. 06-cv-1099, 2006 U.S. Dist. LEXIS 64960(E.D. Pa. Sept. 11, 2006). The Third Circuit reversed the District Court's denial of defendant's motion to dismiss finding that Hunt failed to state a claim because Hunt failed to allege justifiable reliance on defendant's deception:

> The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm. Hunt, 538 F.3d at 222 (citations omitted).

In interpreting the reliance requirement, courts have focused on affirmative misrepresentations by creditors. For example, a plaintiff showed reliance by pointing to the creditor defendant's affirmative misrepresentations that the debtor would receive lower interest rates, the creditor would fix the debtor's bad credit, and the debtor's sign up fee would be used to pay off creditors. Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 397-98, 413 (E.D. Pa. 2006). Nowhere in Plaintiff's Complaint does Plaintiff allege reliance on any representation made by ERS. Therefore Plaintiff's claims under the FCEUA and the UTPCPL should be dismissed under the authority of Fed. R. Civ. P. 12(b)(6).

**(5)    Plaintiff's claims under the UTPCPL fail because Plaintiff has not alleged a single instance of misrepresentation by ERS.**

Plaintiff has generally alleged that she is entitled to relief under the UTPCPL because of "[t]he use of false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer." Complaint at ¶ 33(d). Other than boilerpate language, Plaintiff has not alleged a single act by ERS that can be properly characterized a false representation or deceptive act. Remember, Plaintiff's only real complaint about ERS' actions is that ERS contacted Plaintiff, by telephone, about a debt owed by Sarah Fuendar, after Plaintiff told ERS that she was not Sarah Fuendar and that Ms. Fuendar did not live at the phone number

that ERS had dialed.  <u>See</u> Amended Complaint, at ¶ 8.  Plaintiff's reliance on boilerplate language to establish a claim that requires false representation or deception - when it is clear that false representation or deception are not part and parcel to the acts that Plaintiff attributes to ERS -fails to clear the bar set by the United States Supreme Court in <u>Twombly</u>.

Neither can Plaintiff state a claim against ERS, under the UTPCL, for that ERS did not say.  Misrepresentation by omission is not sufficient to state a claim under the UTPCPL.  <u>Porter v. Nationscredit Consumer Disc. Co.</u>, Civ. No. 03-03768, 2006 U.S. Dist. LEXIS 83161 (E.D.Pa. Nov. 14, 2006) (finding Plaintiff could not establish a claim under the UTPCPL because Plaintiff seeks to prove affirmative misrepresentation through the Defendant's omissions. Specifically, Plaintiff alleges that she stated in her initial conversations that she did not want credit life insurance yet Defendant ignored this request and charged Plaintiff for this insurance.).  In this instant matter, Plaintiff has not alleged a single incident of misrepresentation by ERS affirmative or otherwise, and as a result Plaintiff's claims against ERS, under the FCEUA and UTPCPL should be dismissed under the authority of Fed. R. Civ. P. 12(b)(6).

**C.    Plaintiff's TCPA claims fail for failure to state a claim and lack of jurisdiction.**

**(1)    Plaintiff's claims under the TCPA are barred by FCC exceptions.**

The Telephone Consumer Protection Act (TCPA), 47 U.S.C.S. § 227(b)(1)(B), in part, makes it unlawful to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Federal Communications Commission (FCC) under § 227(b)(2)(B).  The TCPA provides that the FCC may exempt from coverage (i) calls that are not made for commercial purposes and

(ii) calls made for commercial purpose where the FCC determines that the call (I) will not adversely affect the privacy rights intended to be protected by the TCPA and (II) does not include the transmission of any unsolicited advertisement.

The TCPA provides that the FCC may exempt from coverage (i) calls that are not made for commercial purposes and (ii) calls made for commercial purpose where the FCC determines that the call (a) will not adversely affect the privacy rights intended to be protected by the TCPA and (b) does not include the transmission of any unsolicited advertisement. 47 U.S.C. § 227(b)(2)(B).

The FCC exercised it authority to create exemptions with the issuance of its October 16, 1992 Report and Order. 7 FCC Rcd. 8752 (1992). In its October 16, 1992 report and Order, the FCC created an express exemption for calls made to a party with whom the caller has an established business relationship. Id.; 47 C.F.R. § 64.1200(a)(2)(iv). In this report, the FCC then addressed debt collection calls and declared that "all debt collection circumstances involve a prior or existing business relationship." 7 FCC Rcd. 8752, 8771-8772. The report continued, "an express exemption from the TCPA's prohibitions for debt collection calls is unnecessary because such calls are adequately covered by exemptions we are adopting here for commercial calls which do not transmit an unsolicited advertisement and for established business relationships." Id. at 8773.

The FCC reiterated its position on debt collection in a Memorandum and Order issued on August 7, 1995, and again stated that such calls fall under either the exemption for established business relationships or the exemption for commercial calls that do not adversely affect privacy interests and do not transmit an unsolicited advertisement. 10 FCC Rcd. 12,391, 12,400 (1995).

Judge Legrome Davis, of the United States District Court for the Eastern District of Pennsylvania has held that while the FCC has declared that a debtor's privacy rights are not adversely affected when he receives debt collection calls, a non-debtor's rights are in fact violated when he is subjected to repeated annoying and abusive debt collection calls that he remains powerless to stop.  See Watson v. NCO Group, 462 F. Supp. 2d 641, 645 (E.D. Pa. 2006).  In so ruling, Judge Davis noted that the only argument in support of dismissal articulated by the defendants in Watson was that "because Congress enacted the TCPA only to regulate telemarketing calls and facsimiles . . . the TCPA excludes regulation of other types of calls that utilize artificial or prerecorded messages."  Watson, 462 F. Supp. 2d at 645.

Judge Davis' ruling in Watson, is not binding in this instant matter.  It is well established that "[t]he doctrine of *stare decisis*  does not compel one district court judge to follow the decision of another."  Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1371 (3d Cir. 1991).  In a case like this, where Judge Davis was not presented with the proper argument in opposition to the application of the TCPA to a claim, "independent analysis is appropriate."  Threadgill, 928 F.2d at 1371.  The proper argument in opposition to such a claim is that Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA, and Congress has held that only the circuit court of appeals may review the FCC's rule and regulations.  See 47 U.S.C. § 227(b)(2).

Ordinarily, courts reviewing agency action must apply the principles of Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  Under Chevron, the court asks first whether a statute is silent or ambiguous with respect to the agency decision at issue.  See City of Chicago v. F.C.C., 199 F.3d 424, 427 (7th Cir. 1999).  If Congress has spoken directly to the issue, then "that is the end of the matter," and the language of the statute is the law.  Chevron,

467 U.S. at 842.  If, however, congressional intent is unclear or the statute is silent, the court decides "whether the agency's determination is based on a permissible construction of the statute." City of Chicago, 199 F.3d at 428.  Under the Administrative Procedure Act ("APA"), the court will defer to the agency's interpretation of an ambiguous statute unless it is "arbitrary [or] capricious."  See 5 U.S.C. § 706.

  **(2)  This Court's review of FCC exemptions is barred by statute**.

  This general power to review administrative action may, however, be circumscribed or even foreclosed by statute.  This Court's review of  FCC's creation of exemptions with the issuance of its October 16, 1992 Report and Order, 7 FCC Rcd. 8752 (1992), barring Plaintiff's claims under the TCPA, is foreclosed by statute.  Congress has limited the availability of judicial review of the FCC rules on telephone and telegraph matters to the federal courts of appeals. Chapter 158 of title 28, called the Administrative Orders Review Act, reserves to the courts of appeals (other than the Court of Appeals for the Federal Circuit) the power "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [FCC] made reviewable by section 402(a) of title 47."  28 U.S.C. § 2342 and § 2342(1); see Biggerstaff v. FCC, 511 F.3d 178, 184-185 (D.C. Cir. 2007) (describing the history of the TCPA's EBR exemption). (applying § 402(a) and § 2342 in action challenging the validity of the 1992 EBR exemption).

  Section 402(a) provides that in "any action to enjoin, set aside, annul, or suspend any order of the [FCC]," judicial review "shall be provided by and in the manner prescribed in chapter 158 of title 28."  47 U.S.C. § 402(a).  Together, the Administrative Orders Review Act and § 402(a) "vest the courts of appeals with exclusive jurisdiction to review the validity of FCC rulings." US West Commc'ns, Inc. v. Hamilton, 224 F.3d 1049, 1054 (9th Cir. 2000); see City of

Peoria v. Gen. Elec. Cablevision Corp., 690 F.2d 116 (7th Cir. 1982) ("Proceedings for judicial review of final orders of the FCC . . . may be brought only in a federal court of appeals." (citations omitted).

In short, Plaintiff, whose theory of relief runs counter to an FCC order may seek review of that order only in a federal court of appeal. See Fed. Commnc'ns Comm'n. v. ITT World Commc'ns, Inc., 466 U.S. 463, 468 (1984) ("Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order.") (citing 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a)); Columbia Broadcasting Sys. v. United States, 316 U.S. 407, 425 (1942) (discussing application of the Administrative Orders Review Act and § 402(a) to final orders of the FCC).

Moreover, since Plaintiff "was not a party to the proceedings resulting in such order, decision, report, or action" and therefore is not entitled to direct appeal, she must first petition the FCC for reconsideration before seeking judicial review. 47 U.S.C. § 405(a); see WWC Holding Co., Inc. v. Sopkin, 488 F.3d 1262, 1273 (10th Cir. 2007) (recognizing the Act's prescribed procedure for challenging FCC rulings and noting that "we must assume the FCC's order . .. is valid under the Telecommunications Act" unless that procedure has been invoked).

In Biggerstaff, the D.C. Circuit Court of Appeals addressed a party's challenge to the 1992 Report and Order's creation of an EBR exemption. While the court concluded the party had standing to challenge the exemption, it nonetheless refused to consider the exemption's validity because the party had failed to petition the FCC prior to seeking judicial review:

> A procedural hurdle bars our consideration of Biggerstaff's contention that the court should set aside the 1992 administratively-created EBR exemption because the Commission lacked authority to adopt it. Biggerstaff has not petitioned for a rulemaking to modify the 1992 EBR exemption, which "ordinarily" is "the appropriate way in which to challenge a longstanding regulation on the ground that it is 'violative of statute.'" 511

F.3d at 181-82 (quoting Kennecott Utah Copper Corp. v. U.S. Dep't of Interior, 88 F.3d 1191, 1214 (D.C.Cir.1996)).

This procedure applies equally whether a litigant "wants to challenge the rule directly . . ., or indirectly, by suing someone who can be expected to set up the rule as a defense to suit." City of Peoria v. Gen. Elec. Cablevision Corp., 690 F.2d at 119.  See also United States v. Dunifer, 219 F.3d 1004, 1007 (9th Cir. 2000) ("By its terms, the communications Act's jurisdictional limitations apply as much as to affirmative defenses as to offensive claims.").  As a result, Plaintiff's claims under the TCPA are barred as a matter of law, and this Court lack's the jurisdiction to hear Plaintiff's challenges to the application of the FCC's exceptions under the TCPA

**D.    Plaintiff's claim for Invasion of Privacy fails for failure to allege mental suffering, shame or humiliation.**

Plaintiff alleges she is entitled to a claim for relief for the invasion of privacy because ERS "continuously and repeatedly contact[ed] Plaintiff, a nondebtor, at Plaintiff's place of residence."  Complaint at ¶ 37.  Pennsylvania courts have adopted Sections 652B through 652E of the Restatement (Second) of Torts, which separates invasion of privacy into four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light.  Marks v. Bell Telephone Co. of Pa., 331 A.2d 424 (Pa. 1975).  Plaintiff attempts to state a claim for intrusion upon seclusion under Sections 652B.

An actionable intrusion consists of "an intentional interference with [a person's] interest in solitude or seclusion, either as to his person or his private affairs or concerns . . ." Restatement (Second) of Torts § 652B, comment a.  However, there is "no liability unless the

interference with the plaintiff's seclusion is a substantial one, of a kind that would be offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object. Thus, there is no liability for knocking at the plaintiff's door, or [for] calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." Restatement (Second) of Torts § 652B, comment d. See also Chicarella v. Passant, 494 A.2d 1109, 1114 (Pa. Super. Ct. 1985) (intrusion must be substantial and highly offensive to ordinary person).

Courts have permitted claims for invasion of privacy against debt collectors to go forward when the behavior alleged against the debt collectors was especially egregious. For example, in Diaz v. D.L. Recovery Corp., 486 F. Supp. 2d 474, 476 (E.D. Pa. 2007) this court denied a debt collector's motion to dismiss, under 12(b)(6), where the Plaintiff alleged that the debt collector called her and "warned her that he would, within hours, 'repossess all of her household belongings and even her car' in collection of a debt that she owed. Similarly, in Linko v. Nat'l Action Fin. Servs., Civ. No. 3:CV-07-0034, 2007 U.S. Dist. LEXIS 98718, *20 (M.D. Pa. Oct. 29, 2007) the Court allowed a claim for invasion of privacy to go forward, denying a motion under Fed. R. Civ. P. 56, where a 72 year old plaintiff was called "garbage" and "a fucking liar" by one who attempted to collect the debt of another. The Plaintiff in the above captioned matter failed to allege any facts that suggest egregious acts by ERS.

Moreover, to constitute a tortious invasion of privacy an act must "cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Hull v. Curtis Publishing Co., 125 A.2d 644, 646 (Pa. Super. Ct. 1956). Plaintiff failed to allege any mental suffering,

shame or humiliation.    While in boilerplate language, in Paragraph 41 of her complaint, while attempting to state a claim for intentional infliction of emotional distress, Plaintiff cites "severe emotional distress, harm to her physical and psychological well being and physical harm to the present day, as fully outlined above" Plaintiff failed to make a single allegation of emotional distress or physical harm in the preceding 40 paragraphs.    As a result, Plaintiff's claim for invasion of privacy is exactly the kind of claim that the United States Supreme Court viewed as ripe for dismissal as "formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

   E.    **Plaintiff's claims under section 1692(f) of the Fair Debt Collection Practices Act fail as a matter of law.**

   Plaintiff alleges to state claims under sections 1692b, 1692b(3), 1692d and 1692(f) of the FDCPA.    ERS challenges Plaintiffs claims under the FDCPA, in part, specifically Plaintiff's claims under 1692(f)[2] for lack of standing and for failure to state a claim upon which relief can be granted.

---

[2] 15 USC § 1692f.  Unfair practices.  A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.  (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution. (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument. (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees. (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement. (7) Communicating with a consumer regarding a debt by post card. (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

Plaintiff's claim under 15 USC 1692f fails because Plaintiff has failed to alleged a single act on the part of ERS that can be characterized as unfair or unconscionable.  Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 USC 1692(f).  Section 1692f contains illustrations of prohibited acts, none of which Plaintiff has alleged in her complaint.[3]  The acts that Plaintiff does allege against ERS are not unconscionable for the reasons set forth immediately below.

**F.      Plaintiff has failed to state a claim for punitive damages.**

Pennsylvania has adopted § 908 of the Restatement (Second) of Torts as the rule of punitive damages.  See Feld v. Merriam, 485 A.2d 742 (Pa. 1984), citing Chambers v. Montgomery, 192 A.2d 355 (Pa. 1963).  Under this section, "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2).

"Conduct is outrageous when it is malicious, wanton, reckless, willful or oppressive." Trotman v. Mecchella, 618 A.2d 982, 985 (Pa. Super. Ct. 1992).  Outrageous conduct is found in conduct where the actor shows evil motive or reckless indifference to the rights of others. Trotman v. Mecchella, 618 A.2d at 985 citing Feld v. Merriam, 485 A.2d 742 (Pa. 1984).

Laws like FDCPA were enacted to eliminate "abusive, deceptive, and unfair" debt collection practices.  See 15 U.S.C. § 1692(a), (e).  The Senate Report regarding the FDCPA justified the need for this legislation by recognizing that:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.  Lewis v. ACB Business Services, Inc., 135 F.3d 389, 398 (6th Cir. 1998)

---

[3] See footnote 4.

Plaintiff has not alleged obscene or profane language, threats of violence, misrepresentation of her legal rights, disclosures of her personal affairs to a third party, or any sort of deceptive act on the part of ERS. Plaintiff did not even allege that the ten telephone calls that she received were placed at an unreasonable hours. The worst that Plaintiff can allege is a general allegation that ERS telephone calls that were rude and impolite, and harassing.[4] Such acts do not rise to the level of actions that are "malicious, wanton, reckless, willful or oppressive" as required for punitive damages, under the laws of this Commonwealth. Trotman v. Mecchella, 618 A.2d 982, 985 (Pa. Super. Ct. 1992). There fore Plaintiff's claim for punitive damages should be dismissed.

## IV.   CONCLUSION.

WHEREFORE, ER Solutions, Inc., requests that this Honorable Court: (i) dismiss Plaintiff's claims under section 1692f of the Fair Debt Collection Practices Act; for lack of standing and for failure to state a claim, (ii) dismiss Plaintiff's claims under the Pennsylvania Fair Credit Extension Uniformity Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law in their entirety, for lack of standing and failure to state a claim, (iii) dismiss Plaintiff's claims under the Telephone Consumer Protection Act for failure to state a claim upon which relief can be granted and for lack of jurisdiction over Plaintiff's challenge, (iv)

---

[4] See Juras v Aman Collection Service, Inc. 829 F2d 739 (9th Cir. 1987) (finding that an action under Fair Debt Collection Practices Act (15 USCS §§ 1692 et seq.) counts under 15 USCS § 1692c(a) and 15 USCS § 1692d(5) based on telephone calls made by debt collection agency to debtor before 8:00 a.m. were properly dismissed, in light of bona fide error defense of 15 USCS § 1692k(c), where debtor admitted that timing of calls occasioned no actual damages, debtor presented no persuasive evidence that contents of calls were harassing, abusive, or misleading, collection agency introduced evidence that timing of calls resulted from failure to take into account difference in time zones between debtor's location and that of collection agency, and collection agency employee testified that he called debtor in response to debtor's request for transcript, debt in question having arisen out of student loan). But see Joseph v J.J. Mac Intyre Cos., 238 F Supp 2d 1158. (N.D. Cal. 2002) (finding triable issues of fact regarding plaintiff's claims under 15 USCS § 1692d, where defendant acknowledged that it made nearly 200 calls to plaintiff over 19-month period, and where, moreover, on some days there were multiple calls made after voice contact in which plaintiff requested no further calls be made; although defendant argued that volume and frequency of calls was partly excused by fact that defendant was collecting on multiple debts owed by plaintiff, defendant cited no authority for that proposition and no such distinction apparent from plain language of § 1692d(5)).

dismiss Plaintiff's state law claims for Invasion of Privacy for failure to state a claim, and (v)

find that Plaintiff has failed to allege claims that support punitive damages, as a matter of law.

Respectfully submitted this 15th day of January 2010.


KAUFMAN DOLOWICH VOLUCK & GONZO LLP


BY:_____*/s/ Anne R. Myers*_____
Anne R. Myers, Esq. (Pa. Bar No. 201900)
1777 Sentry Park West
Gwynedd Hall, Suite 301
Blue Bell, Pennsylvania 19422
(215) 461-1100
(215) 461-1300 (fax)
amyers@kdvglaw.com
Attorneys for Defendant ER Solutions, Inc.

## CERTIFICATE OF SERVICE

I hereby certify on January 15, 2010 that a true and correct copy of DEFENDANT ER SOULTIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT and MEMORANDUM OF LAW IN SUPPORT OF ER SOLUTIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED was served by first-class U.S. mail, postage prepaid, and electronically to the counsel below listed:

FRANCIS & MAILMAN, P.C.
Mark D. Mailman, Esquire
John Soumilas, Esquire
Geoffrey H. Baskerville, Esquire
Land and Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110


*/s/ Anne R. Myers*
Anne R. Myers, Esquire

ND: 4837-1476-4293, v. 1